CuRia, per
Colcock, J.
The authority of a Court of Equity to re-examine acts which have been settled by the parties interested in them is well established. When there has been fraud committed by either party, the Court will do so after any length of time, and even when the person committing the fraud is dead. Madd. Cha. 102. Beames’ Pleas in Equity, 232. Where there is an error apparent on the face of the account, the Court will not hesitate to relieve. The Court, however, is not generally speaking inclined to unravel an old account, notwithstanding it may have been settled upon an erroneous principle. Nor will the Court open a settled account, where it has been signed, or a security taken on the footing of it, unless for fraud or errors distinctly specified in the bill and proved as specified. We collect, indeed, as sanctioned by the highest authority, that no settled account ought to be opened upon the mere suggestion of a bill in equity, especially where the truth of such suggestions is fully and substantially denied by the answer. In a case before Lord HaRdwicke it was stated, that pending the suit the parties came to a composition. To this it was objected that, as there was no particular account by items, it ought not to stand. But he considered the objection as unavailable, observing, that if *162 that prevailed, no stale and various transaction could be pUt an encj to without a minute account, which would create endless suits: so that in a case of composition, even without an account, where no fraud was charged, he would not sustain the bill. Beames’ Plea's in Equity, The Court also invariably looks to the character 0y t|le perS0n who states an account, and if he be in r all respects fully competent to a full ^discharge of the duty, the more reliance is placed in the account. And jn some cases where an account is sent by one merchant to another, with a balance stated against him, and he keeps it by him for two or three years, it is considered as a settled account between them. Having thus shewn , _ . , the general powers of the Court of Equity m the revi-gjQn accountS) j now proceed to shew that in this case there is no ground for the exercise of this power. In the first place it is to be recollected, that this settlement took place in consequence of a bill filed in Equity against defendants, claiming from Botifeur a large sum of money as due by him to Gale. That Botifeur, instead of contesting the claim in the Court, agreed for reasons, not at all affecting the defendants, to enter into this settlement, and that the defendants were entirely ignorant of the transactions of. Gale, except so far as appeared from his books, and were wholly at his mercy. In this state of things it was agreed that Botifeur himself should make out the account, which he did; and struck a balance against himself of $12,734. But as some of the items of this account rested entirely on Bo-tifeur1 s own statement, it was agreed that Botifeur should be bound to produce proof of them at a future period, or pay the sum fixed on in the said bond — thus manifesting a decided determination to close the account for ever, leaving open the particulars to be settled on the terms stated in those bonds. By this mode of proceeding, an easy remedy was afforded,to either of the parties, *163 if any injustice was done in the settlement of the accounts. In addition to these facts it is proved that a sum of $-was given up on the item now disputed of $9,057, on account of bad debts supposed to have been made on that adventure. It is then clear, beyond a doubt, that the parties themselves did not intend any further or future investigation, and to evidence this still further, Botifeur, at the foot of the account, gave a receipt in full. Botifeur failing to produce the proof to substantiate the charge of $2,640, for eight negroes said to have been appropriated by Gale to his own use, wms sued in a Court of Common Law on the bond given. As to that bond in which he obliges himself to produce an acknowledgment, under the hand of Samuel Gale, that he had appropriated to his own use eight slaves on the coast of Africa belonging to a cargo of the said Daniel Botifeur, and also a certificate under the hand of Benjamin Booth of what was the proper amount, at. which the said eight slaves ought to be charged, the complainants, on the trial at law, produced no evidence but the certificate of Booth as to the price of the ne-groes, and expressing an opinion that Gale had appropriated the said eight negroes, which not being á. compliance with the condition of the bond, a verdict was given against them for $2,080. No appeal was made, but the plaintiffs filed this bill. As to this item in the account, then, there is an insuperable bar to any further investigation. It has been submitted to a tribunal of competent jurisdiction, which has pronounced upon it. It has been said, that that Court could not have afforded the relief to which the parties were entitled. But they were- clothed with all the power necessary to relieve, had the parties shewn that they were entitled to it. And if, as it was intimated, the presiding Judge did charge the jury incorrectly as to the law, the *164 party had a means of redress by appeal. From the view which has been given to us of this case, no other decision could have been made in the Court below; nor coujj t[le plaintiff have succeeded had he carried an appeal to the Constitutional Court. To suffer him to institute an investigation of the matter in a Court of Equity would be to give to that Court appellate jurisdiction in matters of law. In the case of Starke v. Woodward, 1 Nott & M’Cord’s Rep. 329, it was determined that the decision of a Court of competent authority is bind- . „ _ , v J , , . mg upon all Courts having concurrent powers, and this now a ru^e of universal law pervading every regular system of jurisprudence. It is founded in the wis- .. , i . • . .... T„ est policy — that oi putting an end to litigation. II a man, during the whole course of his life, and his representatives after his death, were liable to be dragged from Court to Court upon every item of an account which he had taken the utmost pains to settle, it would introduce a more intolerable state of things than exists in the most arbitrary governments, and would be subversive of every thing like the administration of justice.
The Court ai-ways looks to the character who statesTn account.
it, it is considered as an admission of its correctness. In some cases sonTeeps an account by him fora long time, without objectmg to
The decision ofa Court of competent binding'on Courts having concurrent powers.
The next item of the account, which the Court are required to open, is that which relates to Botifeur's interest in the sales of a cargo charged at $9,057, on which it is said an allowance ought to be made for certain bad debts. Two objections present themselves to the reexamination of this item; the first is, that a deduction was made on this item between the parties themselves of $1,134, as was proved by the testimony of Mr Cogdell; and, secondly, that it is not stated what the amount of bad debts is, and consequently that it could not be ascertained what the charge ought to be. Only $375 were deducted on this item, as contended by complainants, they alleging that the sum of $759 charged as half commissions constituted a part of the aforesaid $1,134. But although this does appear probable, it is by no means to be relied on as *165 proof sufficiently strong to. overturn the testimony of an intelligent and respectable witness. It is clear at all events, that in the adjustment of the account a deduction was made in the very form now taken. But, another objection is, that admitting it to be a proper subject of • iU , - , ? .J :i J review, the complainants do not speedy the error committed, they do not pretend to be able to shew satisfactorily to this Court, even now, what is the amount of loss sustained on the adventure, but state that it is supposed by the agent of Botifeur to amount to ten thousand dollars, no stated account being made of the adventure shewing the profit and loss.
aCcounTmust specified,
The next item objected to is $304 for lawyers’ fees, which it is alleged should have been $408; and lastly, the item of $700, disbursements on the May Flower, which it is contended should have been $982, making a difference in favor of complainants of $386. Now admitting for a moment that these two sums could be substantiated, the result would be that the complainants claim $386; and admit that the defendants gave up in the settlement at least $37 5, which would leave a balance in their favour of $ 11. For such a sum it cannot be supposed the Court will be required to entertain the bill.
The point which has admitted of any doubt is, whether the bill should be dismissed with costs. On the part of the complainants it is contended, that they are entitled to costs, because it is admitted that the bond, conditioned for the repayment of commissions charged if not allowed by Ormond, and which, since the filing of the bill, has been given up to complainants, should have been given up before the bill was filed. But as we have no evidence that the bond was ever previously-demanded, andas it is. manifest it did not form any serious obstacle to a settle,ment, the Court cannot think that the, defendants should be compelled to pay the costs of this protracted litigation on so small a demand. Can it be supposed, if the defend *166 ants had been told that a bill would be filed for the purpose oniy 0f compelling a delivery of this bond, that they would have withheld it1? Or can it be supposed that the complain-antg wou]fi have filed the bill if this had been their only object. It has not escaped the observation of the Court ^at tbe bill is filed by the sureties of Botifeur and that Bo-tifeur lived several years after the settlement of the account. In this bill it is also stated (and the statement was much relied on in the argument) that it might have been inconvenient for Botifeur to find the security which the Court had required, when it is apparent that he found actual security for the payment of the balance stated by himself, and for the payment of the disputed items. Now what greater risk would the complainants have run had they been bound for the whole demand *? Botifeur is no more. He has escaped the ordeal of an oath, perhaps, under all circumstances, the defendants’ best security for a just settlement of their demands. Upon the whole the Court are satisfied that both on the law and the facts of the case the bill should be dismissed with costs. The decree of the Chancellor is therefore affirmed.

Decree affirmed.